CITY OF NEW HAVEN, TRUSTEE OF OLD ALMS
HOUSE FARM OF NEW HAVEN TRUST FUND
*vs.*
CONNECTICUT SAVINGS BANK

Superior Court    New Haven County    File No. 55883.

MEMORANDUM FILED AUGUST 6, 1940.

*Vincent P. Dooley*, of New Haven, for the Plaintiff.

*Albert H. Barclay*, of New Haven, and *Curtiss K. Thompson*, of New Haven, for the Defendant.

BOOTH, J.   This is an action in which the plaintiff seeks to recover of the defendant bank certain funds, some of which were deposited in said bank to the plaintiff's account and some credited thereto by way of dividends, alleging that it never withdrew or authorized the withdrawal and that it has never received three certain amounts with which the defendant debited the account, and that these amounts are due the plaintiff but that the defendant refuses to pay the same.

The answer admits the refusal of the defendant to pay the amounts in question but puts in issue the allegations that they were never withdrawn by or under the authority of the plaintiff and that they were never received by the plaintiff.   In addition thereto three special defenses are interposed setting up in substance payment and estoppel by conduct.   Issue is joined upon the allegations of these defenses.   From the evidence it appears that since November 1, 1911, the plaintiff, a municipal corporation, was by virtue of a special act of the Legislature approved April 20, 1911, a successor trustee of a fund, the principal of which it was authorized to invest and the income of which it was authorized to apply to the support

and maintenance of the Alms House of the City of New Haven. The trust was originally created by authority of a meeting of the Town of New Haven held on March 15, 1852. The terms of the trust were specified in a deed dated November 22, 1852, which deed was recorded on the land records of the town on the date of its execution. Aside from the record of the aforesaid town meeting vote this deed in so far as appears is the only instrument in which the terms of the trust are specified although the succeeding conveyances in the chain which finally vested the title of the trust in the plaintiff refer to the terms as being the same as those contained in the aforesaid original deed.

By virtue of the aforesaid special act of the Legislature the controller of the City of New Haven was the auditor of the trust and the treasurer of said city was its custodian.

On January 18, 1932, Carlos Stoddard was such controller and G. Henry Brethauer was such treasurer. On January 18, 1932, Mr. Brethauer, as such treasurer, had in his custody as a portion of said trust fund the sum of $1,600 which sum he on that day deposited with the defendant, a mutual savings bank. At the time of the deposit Mr. Brethauer indicated to the defendant that the account was to be opened in the name of "Old Alms House Fund, City of New Haven, pay City Treasurer." So far as it appears he did not disclose the nature or terms of the trust nor did he file with the defendant any certificate concerning the creation of the trust.

Upon receipt of the $1,600 and the above information concerning it, the defendant issued a passbook numbered 217109 in the name of "Old Alms House Farm Fund, City of New Haven, pay City Treasurer", entered the amount of the deposit therein and on a ledger sheet bearing the same legend and number, which ledger sheet Mr. Brethauer signed as treasurer and agreed to the by-laws of the defendant bank then in force, which by-laws contained a provision to the effect that the bank would not be responsible to any depositor for any fraud practiced upon it by forged signatures or by presenting a depositor's book and drawing money without the knowledge or consent of the owner, provided the bank in making payment exercised reasonable care to prevent payment to the wrong person. The passbook containing the above provisions was delivered by the defendant to Mr. Brethauer, who as city treasurer and at that time custodian of the fund in question, received the same and retained it during his term of office as treasurer.

Between January 18, 1932 and February 1, 1933, the defendant bank credited upon the aforesaid passbook the sum of $36.20 by way of dividends or interest upon the $1,600 deposit. On January 18, 1933, Mr. Stoddard, who was controller of the plaintiff city, had died and Mr. Brethauer had resigned as treasurer and had been appointed Mr. Stoddard's successor. One Walter P. Johnson had in the meantime been appointed treasurer succeeding Mr. Brethauer.

On February 1, 1933, a withdrawal of $464.75 was made from the aforesaid deposit by Mr. Johnson as treasurer, who gave the bank his receipt therefor. This withdrawal was paid in the form of a check payable to the order of the City of New Haven, which check was indorsed by Mr. Johnson as treasurer and deposited to the general account of the City of New Haven in the Union & New Haven Trust Company. The amount of this withdrawal obviously included $428.55 from the principal of the fund in question and was utilized by the City of New Haven in paying a premium upon bond purchases made by it from the principal of the aforesaid trust fund. By what authority from the plaintiff this withdrawal was made by Mr. Johnson does not appear, but no question concerning its validity is raised by the plaintiff.

The amount of this withdrawal having been duly entered by the defendant bank upon the plaintiff's account, the balance thereof was reduced to $1,171.45.

Subsequently two deposits were made to the account by the plaintiff and interest added to the various balances until on January 22, 1934, the balance to the credit of the plaintiff was $8,165.65.

During the period between January 18, 1932 and January 18, 1933, while Brethauer was the city treasurer he, as the duly authorized custodian of the trust fund in question, had the physical possession of the passbook in question and took full charge of the details concerning the deposits to the fund. After Johnson succeeded him Brethauer continued to retain the physical possession of the passbook and continued to attend to the details of the deposits to and the withdrawals from the account in question, all apparently by the acquiescence or consent of Mr. Johnson.

On January 22, 1934, Brethauer approached Johnson and informed him that a withdrawal had to be made from the ac-

count and presented Johnson with a form of withdrawal slip which was utilized by the defendant bank interchangeably with another form, to which Johnson attached his signature as treasurer. Brethauer then filled out the body of the slip for $4,198.39, which was greatly in excess of the amount of interest due upon the account at that time. Thereafter Brethauer took the order and passbook to the defendant bank and requested of its teller, Mr. Hansen, a withdrawal of the amount specified in the so-called withdrawal order, at the same time requesting Mr. Hansen to pay the withdrawal in the form of a check payable to the "Union & New Haven Trust Company c/a City of New Haven." Such check was accordingly made out and delivered to Mr. Brethauer. Subsequently, in accordance with a custom which had been acquiesced in by Mr. Johnson, the city treasurer, the check was indorsed with Johnson's indorsement stamp and on the following day deposited to the general account of the City of New Haven in the Union & New Haven Trust Company. On January 24, 1934, this check was paid by the bank on which it was drawn and the proceeds passed to the credit of the City of New Haven in its account just above referred to. Entry of this withdrawal was at the time made upon the plaintiff's passbook and Brethauer resumed the physical possession thereof. This withdrawal reduced the balance of the plaintiff's account to $3,967.26. Thereafter additions by way of deposits and interest were made to the account until January 25, 1935, when the balance thereof was $8,796.18.

On this date practically the same procedure was followed as in the case of the withdrawal of January 22, 1934, except that $5,274.22 was withdrawn from the account upon presentation of an order which requested a check payable "to the order of the Union & New Haven Trust Company for credit City of New Haven." Such request was made by Brethauer to Mr. Hansen, a teller of the defendant bank, who caused such check to be issued and delivered to Mr. Brethauer. Subsequently this check was indorsed in the same manner as the previously referred to check and deposited to the credit of the City of New Haven in the Union & New Haven Trust Company. The amount of this withdrawal was likewise greater than the amount of interest which had accumulated at the time of withdrawal. This withdrawal reduced the balance of the plaintiff's account in the defendant bank to $3,521.96. No further deposits were made to the account but interest was added

thereto by the defendant until on February 24, 1937, the balance amounted to $3,715.72.

At this time Mr. Johnson had resigned his position as treasurer of the City of New Haven and Mr. William G. Cleaver had been appointed in his place in June, 1936. Mr. Brethauer, however, continued to remain controller.

On February 24, 1937, someone forged Mr. Cleaver's signature as city treasurer to a withdrawal order for $3,175.31 of the same form as those previously mentioned. This order came into the hands of Brethauer who presented the same to Mr. Rosenquist, a teller in the defendant bank, obtained from him a check for said amount payable to the "City of New Haven." Subsequently this check was indorsed with Mr. Cleaver's indorsement stamp in accordance with a custom in which he had acquiesced and deposited to the credit of the City of New Haven in its general account in the Union & New Haven Trust Company. The aforesaid withdrawal was duly entered on the plaintiff's passbook, thus reducing the plaintiff's account in the defendant bank to $540.41. This withdrawal was likewise greater than the amount of interest due upon the account at the time.

The claim of the plaintiff is that in permitting these last three withdrawals to be made the defendant breached its undertaking with the plaintiff which existed by virtue of their relationship as depositor and bank. On the other hand, the defendant claims it has sustained its burden of establishing compliance therewith. It is obvious that the gist of this undertaking was that the bank in permitting withdrawals from the plaintiff's account should exercise reasonable care to prevent payment to the wrong person. In the opinion of the court the claim of the defendant should be sustained. It appeared in evidence that Brethauer, who in each instance was the individual who dealt with the bank, was a man who until his disappearance in January, 1938, had occupied several positions of trust in the community, and evidently was regarded with confidence by those with whom he came in contact. He was well known to the tellers who executed the orders of withdrawal which he presented, as a former local banker, a former treasurer of the City of New Haven and also its controller. As treasurer he had opened the account at the bank and was apparently familiar with all its details. In each instance of withdrawal the passbook was presented, accompanied by orders, the forms of

which, while not strictly those of orders, were forms which fulfilled the purpose of orders and which were furnished by the bank and used interchangeably by it and its depositors with a strict form of order. The signatures upon two of the orders were genuine signatures of the city treasurer, and the other while forged contained the general characteristics of the genuine signature of Mr. Cleaver and despite a slight irregularity in spelling was an imitation which might well have been accepted as genuine under the conditions.

In so far as the appearances of the withdrawal orders are concerned, it may be observed that on its face the first was regular in every particular, that is, there were no changes, erasures or other indication that it had been tampered with. The second bore evidence of erasure in the typewritten numerals constituting the amount of the order and that an extra set of numerals had been substituted therefor. The extra set, however, were the same as those erased and corresponded with the amount as contained in typewritten words which appeared below upon the face of the order. In this latter typewriting a greater space appears between the first and second words thereof than between any of the other words in the line. This space however but indicates that whoever operated the type-writer machine which was employed in typing the words in the line in question struck the spacer of such machine twice instead of once as was evidently done when the other words in the line were typed. In so far as the appearance of the third with-drawal order is concerned, the only circumstance aside from that of the signature of Mr. Cleaver is that it was dated February 20, 1937, and not presented until February 24, 1937, which difference does not appear to be of any importance. The signature thereon was concededly forged and yet as previously stated, notwithstanding the claimed misspelling of the name "William" it bears a striking resemblance to the genuine signature of Mr. Cleaver with which the teller to whom it was presented was familiar.

In connection with the presentation of each of these orders it must not be forgotten that they were not paid in cash but by checks of the defendant payable to the order of the City of New Haven which was the beneficiary of the trust fund in question. It also appeared that all the checks with which the defendant bank paid the withdrawals went through the office of the treasurer of the City of New Haven, who was not only

custodian of the fund from which the withdrawals were effected, but also of the general funds of the city and by virtue of practices which had been acquiesced in by both incumbents of the office of city treasurer these checks were deposited in an account over which the respective city treasurers had control. True, the checks were not made payable to the city treasurer as such, but they were made payable to one for whom he had the authority to indorse, he did at least constructively indorse them, and he did at least constructively deposit the proceeds thereof in an account of which he was and is the custodian.

From the foregoing and all of the other facts and circumstances which the evidence disclosed, the court finds as previously stated, that in making payments as it did upon the withdrawal orders in question, the defendant in fact exercised reasonable care to prevent payment of the fund in question to the wrong person and thus fulfilled the obligation placed upon it by its contract relationship with the plaintiff in respect to such fund. While it is apparent from the reports which Brethauer as controller filed with the city concerning the income element of the trust and the deposit slips which included the three withdrawals in question that he diverted about $12,000 of the principal of the trust fund for the purpose of making up a shortage in the general account of the city in the Union & New Haven Trust Company, yet the defendant bank cannot be held liable therefor unless its negligence permitted such diversion. In addition, as above indicated, the withdrawals in question were each entered upon the plaintiff's passbook, the dates being January 22, 1934, January 25, 1935 and February 4, 1937, respectively. This book was at all times in the possession of the plaintiff, yet before suit was instituted on November 4, 1938, no notice was given the defendant of any claim concerning the correctness of the account until July 20, 1938, when the last withdrawal only was questioned. The plaintiff was under the obligation of examining the passbook with reasonable care and promptness and reporting any irregularities found to the defendant within a reasonable time. This obligation the plaintiff failed to fulfill and was thus negligent. As a result of this negligence and without any negligence on its part the defendant made payment of the third withdrawal. Further, as appears above, all three of the withdrawals were actually paid into the treasury of the plaintiff; therefore while their identity may have been lost, the fund itself was not

lost, but so far as appears is still within the possession of the beneficiary of the trust.

In view of the foregoing and all of the other facts and circumstances which the evidence disclosed, it is concluded that the plaintiff is not legally entitled to recover of the defendant upon any of the causes of action set forth in the complaint. Judgment may therefore enter for the defendant upon the issues of all of the counts of the complaint and for the defendant to recover of the plaintiff its costs.